**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| <u>et al.</u>, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-1392 (ABJ) |
| | * | |
| DEPARTMENT OF JUSTICE | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY IN SUPPORT OF**
**<u>PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**
**(ORAL ARGUMENTS REQUESTED)**

# Table of Contents

ARGUMENT ................................................................................................................. 2

THE DOJ IS MISCONSTRUING THE APPLICABLE CASE LAW CONCERNING
OFFICIAL DISCLOSURES IN THE CONTEXT OF A GLOMAR RESPONSE ........ 2

THIS COURT HAS THE DISCRETIONARY AUTHORITY TO INCORPORATE
BY REFERENCE UNOFFICIAL DISCLOSURES THAT HAVE BEEN
OFFICIALLY ACKNOWLEDGED ............................................................................ 7

AS A MATTER OF LAW, THE OFFICIAL DISCLOSURES BY PRESIDENT
TRUMP ARE SUFFICIENT TO DEFEAT IN PART THE GLOMAR RESPONSE. 11

CONCLUSION ............................................................................................................. 14

# Table of Authorities

**Cases**

ACLU v. CIA, 710 F.3d 422 (D.C. Cir. 2013) ........................................................... 2-7, 12

Agility Pub. Warehousing Co. K.S.C. v. NSA, 113 F. Supp. 3d 313 (D.D.C. 2015) ......... 5

Cause of Action v. Treasury Inspector Gen. for Tax Admin., 70 F. Supp. 3d 45
    (D.D.C. 2014) ........................................................................................... 5, 6, 7

Competitive Enter. Inst. v. NSA, 78 F. Supp. 3d 45 (D.D.C 2015) ................................... 5

Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990) ............................................................ 6

James Madison Project, et al. v. Dep't of Justice, et al., Civil Action No. 17-144
    (D.D.C.)(APM) ........................................................................................... 11

Smith v. CIA, 246 F. Supp. 3d 28 (D.D.C. 2017) ....................................................... 5, 6, 7

Wolf v. CIA, 473 F.3d 370 (D.C. Cir. 2007) ............................................................. 2, 3, 6

**Other Authorities**

*http://www.bbc.com/news/world-us-canada-39866767* (last accessed
    November 24, 2017) ..................................................................................... 13

*http://www.foxnews.com/politics/2017/03/15/trump-calls-tax-return-leak-illegal-thinks-
    msnbc-report-is-disgrace.html* (last accessed August 15, 2017) ................................. 10

*http://www.foxnews.com/politics/2017/05/19/rosenstein-on-comey-memo-wrote-it-
    believe-it-stand-by-it.html* (last accessed November 24, 2017) ................................... 13

*https://www.infowars.com/deep-state-drugging-trump-ahead-of-coup-sources-say/* (last
    accessed November 26, 2017) ......................................................................... 8

*https://www.nytimes.com/2017/03/04/us/politics/trump-obama-tap-phones.html* (last
    accessed November 26, 2017) ..................................................................... 9, 10

*https://www.whitehouse.gov/the-press-office/2017/03/16/press-briefing-press-secretary-
    sean-spicer-3162017-25* (last accessed November 26, 2017) ...................................... 10

The plaintiffs, The James Madison Project ("JMP") and Politico reporter Josh Gerstein ("Gerstein")(hereinafter referred to jointly as "Plaintiffs"), brought this FOIA action to secure the lawful disclosure of records held by the defendant agency Department of Justice ("DOJ") reflecting whether President Donald J. Trump ("President Trump") is and/or was a target of, subject of, or material witness to either the "Russian collusion" or "obstruction of justice" investigations.

Presently before this Court are competing cross-motions: DOJ seeks summary judgment with respect the entirety of the underlying FOIA claims, whereas the Plaintiffs only seek partial summary judgment with respect to the "Russian collusion" and/or "obstruction of justice" investigations. Dkt. #11 (filed October 11, 2017); Plaintiffs' Cross-Motion for Partial Summary Judgment (Dkt. #13)(filed October 25, 2017) ("Plaintiffs' Cross-Motion"); Defendant's Reply in Support of its Motion for Summary Judgment and Opposition to Plaintiffs' Partial Cross-Motion for Summary Judgment (Dkt. #15)(filed November 22, 2017)("Def's Reply"). This final reply brief is necessarily limited only to supporting the Plaintiffs' arguments in favor of partial summary judgment.

For the reasons set forth in detail below, this Court should grant the Plaintiffs' Cross-Motion for Partial Summary Judgment ("Cross-Motion") with respect to the impropriety of DOJ's invocation of Glomar responses regarding the "Russian collusion" and/or "obstruction of justice" investigations.

**ARGUMENT**

**I.  THE DOJ IS MISCONSTRUING THE APPLICABLE CASE LAW CONCERNING OFFICIAL DISCLOSURES IN THE CONTEXT OF A GLOMAR RESPONSE**

The case law within this Circuit addressing the "official acknowledgment" exception to the Glomar standard is only 10 years old, and was first addressed in Wolf v. CIA, 473 F.3d 370 (D.C. Cir. 2007). "In the Glomar context, then, if the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue – the existence of records – and the specific request for that information.". Id. at 379 (emphasis in original).

As the Plaintiffs explained in their Cross-Motion, however, both the D.C. Circuit and at least one court within this Circuit have provided clarifying guidance with respect to the nuances of evaluating official disclosures in Glomar cases. Specifically, the Plaintiffs outlined how the courts have addressed official disclosures that specifically implicate the topic of a FOIA request while not acknowledging the existence (or non-existence) of actual records with the level of exactitude that the courts otherwise require for the *substantive* contents of records. See Plaintiffs' Cross-Motion at 3-4, 12-13.

In ACLU v. CIA, 710 F.3d 422 (D.C. Cir. 2013), the Circuit evaluated official disclosures in the context of a FOIA request that sought not merely records reflecting the CIA's "interest" in drone strikes – as the DOJ would have this Court believe, see Def's Reply at 14 – but broadly sought records "pertaining to the use of unmanned aerial vehicles ('UAVs') – commonly referred to as 'drones' … - by the CIA and the Armed Forces for the purpose of killing targeted individuals." See ACLU, 710 F.3d at 425. None of the official disclosures cited to by the Circuit – whether they were from then-President

Barack Obama, then-Assistant to the President for Homeland Security and

Counterterrorism John Brennan, or then-Director of the CIA Leon Panetta – ever

*specifically* acknowledged that CIA was involved in drone strikes, let alone that CIA

would have any documents *specifically about* the drone strikes. Id. at 428-432; see also

id. at 430 ("It is true, of course, that neither the President nor any other official has

specifically stated that the CIA has *documents* relating to drone strikes …")(emphasis in

original). Notwithstanding that limitation on the exactitude of the official disclosures, the

Circuit still found them to be sufficiently specific to justify rejecting CIA's Glomar

response. Id. at 428-29.

The Plaintiffs submit the rationale in ACLU was premised on the creation of a

"neither logical nor plausible" inference, see id. at 430, upon which courts can rely when

sifting through the nuances of an official disclosure. To be unequivocally clear, the

Plaintiffs are not saying the Wolf standard was changed by the ruling in ACLU; the

burden is still on FOIA plaintiffs to identify sufficient evidence of specific official

disclosures necessary to establish the existence or non-existence of responsive records.

However, the Circuit in ACLU did provide additional guidance on how much latitude

courts have in considering the specificity that is required in the context of those official

disclosures. The ACLU ruling established that courts are permitted to evaluate whether it

would be either logical or plausible to infer that the official disclosures sufficiently

establish the existence or non-existence of responsive records even if those official

disclosures did not *specifically* and *exactly* state that responsive records did or did not exist.[1]

In the ACLU ruling, the Circuit relied upon that inferential authority to conclude the official disclosures sufficiently acknowledged the fact that the U.S. Government conducts drone strikes. Id. at 430-32. It was therefore neither logical nor plausible that the CIA would not have records reflecting the existence of those drone strikes (even if the CIA itself was not the one conducting those drone strikes). Id. at 431 ("Unless we are to believe that the Director was able to 'assure' his audience that drone strikes are 'very precise and . . . very limited in terms of collateral damage' without having examined a single document in his agency's possession, those statements are tantamount to an acknowledgment that the CIA has documents on the subject.").

Similarly, in Smith v. CIA, 246 F. Supp. 3d 28 (D.D.C. 2017), U.S. District Court Judge Tanya Chutkan ("Judge Chutkan") rejected a CIA Glomar response in light of relevant and material (although not *exactly specific*) official disclosures. Id. at 32-34. Judge Chutkan concluded it was neither logical nor plausible to conclude that then-President Obama's statements about providing "military and intelligence assistance" to

---

[1] DOJ's attempt to re-write the ACLU ruling's premise, see Def's Reply at 15 n.6, fails to withstand scrutiny. DOJ's suggestion that the Circuit's reference to the "logical and plausible" standard should be construed only as indicating the CIA's legal failure to properly satisfy the requirements of FOIA Exemption 1, see id., and not as clarifying the "official acknowledgement" standard, requires this Court to effectively pretend entire paragraphs of the Circuit's analysis do not exist. The Circuit devoted *twelve paragraphs* outlining the various *official disclosures* upon which its analysis was based, see ACLU, 710 F.3d at 429-432, and did not indicate it was justifying its conclusions with respect to anything other than the "official acknowledgment" exception to a Glomar response.

Israel had not sufficiently acknowledged that the CIA would have budget line items related to intelligence assistance to Israel. Id. at 33-34.[2]

In both cases, the official disclosures by U.S. Government officials never *exactly* stated that there were records in existence (or not in existence) that were *specific* to the scope of records sought by the ACLU or the Smith plaintiffs. Indeed, in neither case did the official disclosures say *anything* about the *specific* existence or non-existence of records responsive to the FOIA requests at issue. Nonetheless, in both cases a determination was made that the official disclosures acknowledging the overarching concept – in ACLU, the existence of drone strikes by the U.S. Government, and in Smith, the existence of U.S. Government assistance to Israel – were sufficiently specific to the scope of information sought by the underlying FOIA requests so as to render invalid the Glomar responses as a matter of law.[3] See ACLU, 710 F.3d at 431; Smith, 246 F. Supp. 3d at 33.

The Plaintiffs respectfully do not read this Court's ruling in Cause of Action v. Treasury Inspector Gen. for Tax Admin., 70 F. Supp. 3d 45 (D.D.C. 2014) as conflicting with the Plaintiffs' understanding of the ACLU standard. In Cause of Action, this Court concluded that the defendant agency had waived the propriety of its Glomar response by

_____

[2] Even though the Smith ruling is being reconsidered, see Def's Reply at 16 n.7, unless and until it is reversed Judge Chutkan's analysis and conclusions remain in place and retain their persuasive value.

[3] Those factual applications of the standard are consistent with how other courts within this Circuit have evaluated official disclosures when *upholding* Glomar responses in the aftermath of the ACLU ruling. See e.g., Agility Pub. Warehousing Co. K.S.C. v. NSA, 113 F. Supp. 3d 313, 333 (D.D.C. 2015)(concluding NSA's acknowledgment of metadata collection from Verizon Business Network Services did not constitute acknowledgment of metadata from other service providers); Competitive Enter. Inst. v. NSA, 78 F. Supp. 3d 45, 54-55 (D.D.C 2015)(finding that NSA's official disclosures only acknowledged collection of "telephony metadata", not texts or e-mails).

having officially acknowledged the existence of the very investigation regarding which the underlying FOIA request was seeking records. Id. at 56. This Court specifically highlighted two official records that had already been disclosed: a letter from the Inspector General for Tax Administration to several members of Congress, stating that a review would commence, and a later e-mail from the relevant investigator stating that a final report had been produced. Id. at 57. Although this Court stated that it *could* conclude the first letter was insufficient on its own under the ACLU standard, this Court ultimately did not have to render a decision one way or the other on that question due to the existence of the separate e-mail from the investigator. Id.

The Plaintiffs are cognizant that, even if only as dicta, this remark in Cause of Action was certainly indicative to some extent of this Court's view of the precedent set forth in Wolf and ACLU. However, the Plaintiffs respectfully submit that this Court would have been within its discretion and in compliance with binding case law to have concluded that the letter from the Inspector General alone was sufficient to defeat the Glomar response in Cause of Action. The Plaintiffs respectfully contend that, consistent with Judge Chutkan's analysis in Smith, this Court could have properly concluded that the specific "matching" criteria that arose out of Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990) – and to which this Court alluded, see Cause of Action, 70 F. Supp. 3d at 57 - was not applicable in that situation and did not require (although it certainly did not preclude either) the existence of the investigator's e-mail in order for the plaintiffs in Cause of Action to prevail. Rather, by officially disclosing the existence of an internal review by the Office of Inspector General, the letter on its own rendered it logical and plausible for this Court to infer that the defendant agency official disclosure was a sufficiently specific

acknowledgment of the existence of records responsive to the <u>Cause of Action</u> plaintiff's FOIA request.

The Plaintiffs further respectfully submit that for this Court to construe the applicable case law to the contrary would directly conflict with the circumstances that existed in <u>ACLU</u>. The plaintiffs in <u>ACLU</u> could not point to the type of exacting and specific official disclosures that existed in <u>Cause of Action</u> but the Circuit did not conclude that it was necessary for them to do so either in order to prevail on the basis of an "official acknowledgment" argument. It would be contrary to precedent for this Court to now attempt to do so here in the present case.

## II.  THIS COURT HAS THE DISCRETIONARY AUTHORITY TO INCORPORATE BY REFERENCE UNOFFICIAL DISCLOSURES THAT HAVE BEEN OFFICIALLY ACKNOWLEDGED

The Plaintiffs explained in their Cross-Motion that this Court retains the equitable discretionary authority to "incorporate by reference" otherwise-unofficial information regarding which President Trump had substantively and directly addressed by way of his official disclosures. <u>See</u> Plaintiffs' Cross-Motion at 8-9. The Plaintiffs argued that discretionary authority permitted this Court to incorporate by reference portions of a media report to which President Trump was referring that indicated the President is the subject or target of the "obstruction of justice" investigation. <u>Id</u>.

Although DOJ takes issue with the premise of the Plaintiffs' argument, <u>see</u> Def's Reply at 8-9, they do not – nor could they, <u>see</u> Plaintiffs' Cross-Motion at 9 – cite to any case law (particularly any adverse case law) that is directly on-point with respect to the factual circumstances in the present case. DOJ's counter-argument ultimately boils down to a "slippery slope" public policy concern that if this Court were to side with the

Plaintiffs' view of its authority it would interfere with the ability of government officials to comment on news reports. <u>See</u> Def's Reply at 8.

Although DOJ's public policy concern is legitimate in the abstract, the position advanced by the Plaintiffs here is rather narrow and would more than likely be applied by future courts as the exception rather than the rule. The Plaintiffs do not contend that *any* remark by a government official with respect to unofficial information detailed in a news report would require the courts to incorporate by reference the relevant portions of the news report as "officially acknowledged." Such a position is far beyond the scope of what the Plaintiffs are seeking here. Rather, it is the Plaintiffs' narrow argument that this Court retains the discretionary authority to incorporate by reference unofficial information if – *and only if* – the authorized government official has *substantively and concretely* relied upon and/or addressed that unofficial information on its merits.

For context, the Plaintiffs submit the following two factual hypotheticals with respect to how this Court could evaluate official statements addressing a media report. On September 11, 2017, the media site InfoWars posted a story claiming that "Deep State" operatives were putting sedatives in President Trump's food and drink. *https://www.info wars.com/deep-state-drugging-trump-ahead-of-coup-sources-say/* (last accessed November 26, 2017). For the record, the undersigned have no basis to believe this story is factually correct.

In the first factual hypothetical, White House Press Secretary Sarah Huckabee-Sanders ("Mrs. Sanders") – in a manner consistent with the methods employed by past White House spokespeople – either declines to comment on the story or states that she is not aware of any information that would suggest the story is true. Mrs. Sanders has now

officially commented on the story, and has even given a quasi-denial, but has not in any

way substantively addressed the merits of the claims in the story. In that circumstance,

there would be no legal basis for the courts to view any aspect of the InfoWars story as

"officially acknowledged".

In the second hypothetical, President Trump posts on Twitter that he just learned of a

plot by "the Deep State" to poison him. In a White House press briefing that same day,

Mrs. Sanders explains that the President just read the InfoWars story and confirms that

the President's tweet was made in response to the claims outlined in the story. President

Trump subsequently states in a later media interview that he wants Congress to

investigate the claims made in the InfoWars story. In that situation, the Plaintiffs submit

that the courts would retain the discretionary authority to view at least the "poisoning"

portion of the InfoWars story as "officially acknowledged". The distinction between the

first and second hypothetical is that in the latter both President Trump and Mrs. Sanders

*substantively* addressed the merits of the claims – in that President Trump definitively

stated he was aware of a plot to poison him and Mrs. Sanders reiterated his position – and

President Trump then went so far as to call for an investigation into those claims.

The factual hypothetical in the second scenario, of course, is not the work of mere

fantasy or fiction. A very similar situation transpired in March 2017 with respect to

allegations that the Obama Administration had secured surveillance warrants targeting

President Trump and/or his associates during the presidential campaign. President Trump

made a series of official statements – both via Twitter and in media interviews – in which

he stated that the Obama Administration had his "wires tapped" and that at least one

application for surveillance had been rejected. *https://www.nytimes.com/2017/03/04*

9

*/us/politics/trump-obama-tap-phones.html* (last accessed November 26, 2017);

*http://www.foxnews.com/politics/2017/03/15/trump-calls-tax-return-leak-illegal-thinks-*

*msnbc-report-is-disgrace.html* (last accessed August 15, 2017). In an attempt to explain

the context of President Trump's remarks, then-White House Press Secretary Sean Spicer

("Mr. Spicer") resorted to substantively citing and relying upon unofficial disclosures in

media reports as the factual justification for President Trump's official statements that

such surveillance (and applications for warrants authorizing surveillance) had transpired.

*https://www.whitehouse.gov/the-press-office/2017/03/16/press-briefing-press-secretary-*

*sean-spicer-3162017-25* (last accessed November 26, 2017)(referencing at least nine

separate media reports addressing unofficial assertions that surveillance had occurred or

been requested by Obama Administration and expressing President Trump's desire for an

investigation into controversy).

   Those actions by President Trump and Mr. Spicer could reasonably be construed as

*substantively* addressing and/or relying upon the unofficial disclosures on their merits.

Similarly, in the present case, President Trump *substantively* addressed the merits of the

media reports about Mr. Mueller's investigation, stating without equivocation that he

(President Trump) is being investigated for firing Director Comey. See Plaintiffs' Cross-

Motion at 8. This was not President Trump merely commenting on a story, but rather

*concretely* adopting the otherwise-unofficial disclosures in that story as factual truth.

There is nothing in President Trump's June 16, 2017, tweet that could reasonably be

construed as suggesting anything other than the idea that what is claimed in the media

report – that Mr. Mueller's investigation encompasses a potential "obstruction of justice"

charge against President Trump for firing Director Comey – is accurate as a factual matter.

The Plaintiffs are fully cognizant that these are somewhat uncharted waters in which they are asking this Court to swim. However, the unorthodox and unconventional manner by which the current Administration addresses claims in media reports has left the Plaintiffs with no other choice but to seek judicial clarity with respect to the scope of the "official acknowledgment" exception to the Glomar response.[4]

If President Trump's tweets and public remarks are, in fact, official statements from the Office of the President of the United States, they must hold some meaning and legal value, particularly when the President chooses to incorporate media reporting to support the legitimacy of his official statements and for the purposes of influencing the thinking of Americans across our country.

### III. AS A MATTER OF LAW, THE OFFICIAL DISCLOSURES BY PRESIDENT TRUMP ARE SUFFICIENT TO DEFEAT IN PART THE GLOMAR RESPONSE

In their Cross-Motion, the Plaintiffs outlined the material information that had already been officially disclosed that was relevant to this Court's assessment of DOJ's Glomar responses with respect to the "Russian collusion" and/or "obstruction of justice" investigations. Plaintiffs' Cross-Motion at 5-9.

---

[4] In a separate, unrelated FOIA case pursued by the undersigned on behalf of the same set of plaintiffs, DOJ filed a brief in response to a court order asking for the Government's position on the "official" nature of tweets issued by President Trump. In its brief, DOJ stated the following: "In answer to the Court's question, the government is treating the President's statements to which plaintiffs point – whether by tweet, speech or interview – as official statements of the President of the United States." See Exhibit "1" at *4 (Defendants' Supplemental Submission and Further Response to Plaintiffs' Post-Briefing Notices)(filed in James Madison Project, et al. v. Dep't of Justice, et al., Civil Action No. 17-144 (D.D.C.)(APM))(Dkt. #29)(filed November 13, 2017)).

Specifically, President Trump has officially disclosed that former FBI Director James Comey ("Director Comey") informed him on three separate occasions that he was not under investigation in the context of the "Russian collusion" investigation. Id. at 5-7. President Trump further officially disclosed that he has not been asked to be interviewed by Special Counsel Robert Mueller ("Mr. Mueller") in the context of the "Russian collusion" investigation. Id. at 8.

The President's official disclosures concerning the information provided to him by Director Comey are critical and ultimately are fatal to DOJ's Glomar response. President Trump unequivocally has officially acknowledged that on three separate occasions he was informed by no less an authoritative source than the Director of the FBI that he (President Trump) was not under investigation in the context of the "Russian collusion" investigation. Just like with the circumstances in ACLU, unless we are to assume that Director Comey provided that reassurance to President Trump on three separate occasions without *ever* having reviewed a *single* DOJ document or having a *single* discussion with anyone within DOJ, President Trump's official statements sufficiently qualified as an official acknowledgment that DOJ has documents that would be responsive to the Plaintiffs' FOIA requests. Indeed, it would be neither logical nor plausible to conclude that Director Comey's remarks to President Trump were not based, at least in part, upon information that was previously reduced to writing and that reflect discussions regarding whether President Trump is/was a target of, subject of or material witness to the "Russian collusion" investigation.

President Trump also officially acknowledged the existence of the "obstruction of justice" investigation by stating unequivocally that he is "being investigated" for firing Director Comey. Plaintiffs' Cross-Motion at 8. DOJ has already officially disclosed that Deputy Attorney General Rod Rosenstein ("Mr. Rosenstein") – who later authorized the appointment of Mr. Mueller as Special Counsel – drafted for Attorney General Jeff Session's review a memorandum outlining bases justifying a decision by President Trump to fire Director Comey. *http://www.foxnews.com/politics/2017/05/19/rosenstein-on-comey-memo-wrote-it-believe-it-stand-by-it.html* (last accessed November 24, 2017) (summarizing Mr. Rosenstein's testimony to Congress); *http://www.bbc.com/news/world-us-canada-39866767* (last accessed November 24, 2017)(Mr. Rosenstein's memorandum).[5] It is Mr. Rosenstein to whom President Trump was referring in his June 16, 2017, tweet[6], and it is the Special Counsel investigation authorized by Mr. Rosenstein that President Trump is now claiming has targeted him (President Trump) for potential obstruction of justice related to the firing of Director Comey.

Once again, DOJ's Glomar response is undone by none other than President Trump's own official statements. It was President Trump – and President Trump alone – who officially acknowledged the existence of an investigation into his decision to fire

---

[5] The Plaintiffs are providing these additional citations to official statements out of an abundance of caution, and only as a result of DOJ's argument, see Def's Reply at 7, that President Trump's June 16, 2017, tweet was insufficiently specific in identifying the referenced individual. Although the Plaintiffs believe the official disclosures originally provided in their Cross-Motion more than sufficiently met their burden to demonstrate the official acknowledgment of the existence of the "obstruction of justice" investigation, they are nonetheless filling in here any potential factual gaps this Court might believe remained open.

[6] The Plaintiffs apologize for initially mis-identifying Mr. Rosenstein and incorrectly indicating it was Mr. Mueller to whom President Trump was referring in the June 16, 2017, tweet. See Plaintiffs' Cross-Motion at 13.

Director Comey. It was President Trump who chose to incorporate by reference otherwise-unofficial information contained in media reports and to subsequently issue an official statement deriding as a witch hunt the investigation looking into the details surrounding his firing decision. President Trump's official disclosures are more than sufficient to constitute the acknowledgement of the existence of responsive records implicating the "obstruction of justice" investigation.

If DOJ is concerned about the integrity of the Special Counsel investigation being undermined, they need thank none other than the President himself for having done so. These official disclosures by President Trump are more than sufficient to warrant denying DOJ's Glomar responses with respect to the "Russian collusion" and/or "obstruction of justice" investigations.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Plaintiffs' Cross-Motion for Partial Summary Judgment should be granted.

Date: November 29, 2017

Respectfully submitted,

/s/

_____

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiffs